Good morning, your honors. May I please the court, Susan Horner from Miller, Monson, Peschel, Polachek, and Hoshaw in San Diego on behalf of the appellants Reed and Delfa Ennis and Commercial Conservancy. This is an ERISA case involving a pension plan dispute that involves a profit-sharing plan that the Ennis Enterprises company had from 1972. I thought it might be useful to just briefly recap some of the major points in the factual history because it involves a long period of time. Is this an ERISA case? Yes, it's an ERISA case. So a federal common law equitable estoppel claim falls under the umbrella of ERISA? Yes, the federal common law equitable estoppel greenie action, which I believe your honor sat on the greenie panel back in 1992. I remember. Oh, okay. That is applied to the ERISA enforcement scheme. But is it an ERISA claim? Because it says statute of limitations implications as far as I know. It's not an ERISA cause of action. That's right. It's an equitable principle that's applied to the civil enforcement scheme of ERISA, which of course is defined in the statute. This is a prelude to asking the question, where do we look for the statute of limitation? And if it's not an ERISA claim, it may be something that you look outside of ERISA for in terms of statute of limitations. The particular action brought here was under the second amended complaint. We went through several versions. As the Court knows, we had several orders along the way. The only thing that survived was federal common law equitable estoppel. Am I right? Yeah. Actually, it was a federal common law. That was Judge Lorenz had suggested that the plaintiff at least allege federal common law promissory estoppel action. The parties, or at least the, we did not bring a motion for reconsideration to advise Judge Lorenz that under, sorry, under Pacific Care Watkins Bayona, that that's an action outside of ERISA. However, the second amended complaint was, or the complaint was amended, and it alleged federal common law promissory estoppel. And that, I think, is where one of the confusions came in with the district court is you have a federal common law promissory estoppel, which is identified in the order and the judgment by the court. And then it sort of grafted into that action the Greeney principles, or the Greeney elements. And the Greeney elements, in doing that, the court did not even apply the Greeney elements properly, and it completely ignored the two elements for a federal common law promissory estoppel action. Is this an ERISA case or not? It's an ERISA case. Okay. It involves an employee benefit plan established, you know, under ERISA, which was a... So that's where we look for statute of limitations answers ERISA. Well, no. If you're under section, if you're under Part 4 of ERISA, if you bring an action, let's say you are the trustee and you're bringing an action against the plan, or a group of beneficiaries suing the plan under Section 409 or Section 405 for breach of co-fiduciary duty, then there is a statute of limitations that's under Section 413. And Section 413 has, the subpart would be subsection 2, and it has the earlier of, you apply the three years post actual knowledge of the breach, and that has a test, or six years after the discovery. In the case of fraud, it's six years after the discovery of the breach. And that's applied separately because that wording is the same as under 413-2. The court looks to actual steps to cover up or to cover up the tracks of the fraud, to conceal the fraud that occurred. And that was one of the problems with applying that. But ERISA under 502, which is the civil enforcement section for participants, employees, beneficiaries, that does not have a statute of limitations. So for all of your long-term disability cases, your health care cases, your life insurance cases, any of them that. Are you two, are both sides in agreement as to the applicable statute of limitations? I'm sorry. Is there a dispute between the two sides as to the applicable statute of limitations, or are you in agreement? No, there is a dispute. As to what it is, not as to how it comes out, not as to whether they met it. No, both. As to what, you disagree on what to apply? Yes. You don't both agree that it's a three-year and six-year? No. What we had said in our brief is that we believe that the state law contract limitations periods apply because we're outside of section, of part four, basically. Two for oral, four for written. You look to California. Yeah. And there's a four-year contract limitations for written. And the court had found that Chip definitely knew that the profiteering plan had been terminated, and he, in fact, negotiated for an additional $8 an hour so that he could save that amount for pension benefits forward. And the court talked about that date and then used that date, that was the February 2, 1993 date, and applied that to the fraud section of section 413, which is six years after the discovery. That, of course, is the same language that's under the 413 subsection 2. I've cited for you the statutory, I think it's on page 15, Roman numeral 15. That's the language of section 413. So under subsection 2, it's three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation, except in the case of fraud or concealment, and that's six years. And then the courts apply that as being actual fraud, covering up of the fraud, concealment of the fraud. So you're saying that's not what applies to three and the six years? We don't believe so. You want to apply two and four? We believe that the state statute applies. And if the three and six year statute applies, you still don't think they've met that? No, because the fraud section is what has been misapplied of that. Judge Lorenz had applied the section 413 subsection 2, the earlier of the three years or six years after the discovery, three years of actual knowledge or six years after discovery. But he applied third circuit law, which there's a split in the circuit, and the third circuit law is the Gluck case, which we had briefed. And the ninth circuit applies, the ninth, eleventh, and sixth circuits, apply a different law in interpreting when actual knowledge occurs. So that was the reason that using the 413 section, the complaint was not barred, or the ERISA action was not barred by the statute of limitations. It applied the 413 subsection 2, three years from actual knowledge, but then it applied the third circuit law on it instead of ninth. In the ninth circuit, what it requires is only knowledge of the relevant facts or the conduct. And in 1984, Chip had admitted knowing that the profit sharing plan wasn't funded. He did also admit to knowing that there was an additional investment made in the South Poway Business Park project to try and create some sort of earnings that were actually projected at a five to one, so that that could be a cushion in case the profit sharing plan couldn't be funded. And that failed. And that failed. And many people lost on that. But nevertheless, that failed. You can still have an obligation to pay benefits, whether the plan's funded or unfunded. I'm not sure what your comment, what kind of plan. Even if you know that it's not funded, that doesn't mean you know you're not going to get benefits. You can have a promise to pay benefits, whether the plan's funded or not. You can't have a promise to pay benefits that contradicts, amends, or otherwise modifies a written plan. Right. And when you don't have a copy of the written plan, then you try to determine what it is. And you can determine what it is on the basis of the oral testimony if the trust no longer has a copy of the plan. The last, well, that goes back to what happened in the case. Let me revisit just a couple of the facts. ERISA, of course, was enacted in 1974. The profit sharing plan was amended to conform to ERISA in 1976. In 1977 is when the county rezoned the property and basically said no more industrial use. So the entire company character changed back to a personal services corporation. In 1984 is when the new property had been found, located, approved for rezoning, and they were in the process of obtaining the construction loan to develop that. They did that in 1985 and got the huge construction loan, and in 1985 the profit sharing plan was amended with the Corbell documents. The Corbell are standard documents naming a profit sharing plan. It has all of the standard provisions. It costs a lot of money to amend those plans. That is the document that was retained. The profit sharing plan was actually terminated in early 1993 because one of the three members who had rolled in money into it back in the 70s, Dwayne Bishop, had retired and needed a cash out of his account. So the account was cashed out, and that meant the plan needed to be terminated. So the funds that had been rolled in for Reed and Delpha in the early 70s, they took their vested accounts out and actually put them right back into the company to try and save the company. So the profit sharing plan did not exist anymore. The next month is when Reed and Chip had their conversation about there isn't any more profit sharing plan and there's no funds in it. Not that there wasn't any plan, unless you're arguing that Judge Lorenz committed clear error in his factual findings. I'm sorry. Are you arguing that Judge Lorenz committed clear error? I'm sorry. Judge Berns? Judge Lorenz, in the first two orders, found that the profit sharing plan existed. Okay. Who issued the final? Okay. The final was Judge Berns. Judge Berns. Okay. So are you arguing that Judge Berns' factual findings are clearly erroneous? Yes. Okay. So you're arguing to us the facts now, that because Judge Berns found, as a factual matter, that the conversation between Reed and Chip in 1993 was not that there wasn't a plan. It was simply that the plan was not fully funded. Well, the profit sharing plan, Judge Berns acknowledged the many 5,500 forms. He admitted into evidence a number of them. Each 5,500 form was filed each year because the plan was in existence. The 5,500 forms state that the plan's in existence. It states the funds in the plan. The IRS audited the plan. Judge Berns acknowledged that. And yet he says, well, I'm not sure that there's a plan. The problem is Mr. Stevenson was the person who did all of the amendment with the Korbel documents. That happened in 1988. Because the plan terminated in 1993, Chip didn't sue until November 1998. In the meantime, the company, which was now Commercial Conservancy, moved on to the new property, which was finally completed in January of 1999. I'm still confused. So you're saying that Judge Berns was wrong in finding that there was a plan in existence in 1993, but that it wasn't funded? No. What Judge Berns found is there's a plan, but we have no idea what the terms are. Even though he's got a 1985, probably the last amendment to the plan, because it brought it into conformance and there was no reason thereafter, because of the sewer moratorium placed on the company, which basically froze it. It couldn't move on to the new company. I mean, it had huge financial problems. There was no reason to change the plan. There was no evidence that at any time the plan, not only the plan changed, but the entire character from a defined contribution plan, which is the profit-sharing plan, to a defined benefit plan. What Judge Berns did is he actually created a new plan by using the Greenie elements, finding that and misusing the Greenie elements, by finding that the profit-sharing plan was, quote, ambiguous, because I'm not sure what the plan terms are. I agree. It's hard to say that a plan is ambiguous if you don't know what the terms are. But if you say, as I understood him to say, that there is a plan, but there is no authenticated, signed, executed copy of the plan, but there is a plan and there are obligations under the plan, and I can determine those obligations from the testimony of the parties. And looking at the plan document. And under the Donovan test, which is in this circuit would be Fort Halifax and Scott v. Goldfoyle, you don't even need to have a written plan document as long as you meet the Donovan element or the Donovan elements. It requires an ongoing administrative scheme. It requires identification of the funding source, the identification of the beneficiaries. The 1985 document, even though that particular copy, which was in Reed's possession, is unsigned, nobody knows what happened to, I mean, it raises the issue of latches, nobody knows what happened to the original signed copy because it was in the possession of Mr. Stevenson, who was in charge of doing everything with the plan. The company actually moved to the new, sorry, was wound down and terminated as of, or dissolved, rather, as of end of 1994. And the action isn't even filed until four years later. There's no reason that Mr. Ennis would have kept around a bogus plan document all those years. It just happened to be an unsigned document. But you can tell all of the major provisions, and as a matter of law, a profit sharing plan, as law, under the IRS code, or under the Internal Revenue Code, is a plan that allows contributions to be made up to a certain level of employees' salary at a discretionary level based on net profits that are available through the company. That, as a matter of law, is what it is. In the Burke case, of course, you actually had a signed plan document that reiterated the same thing that is found in the law, and the Court says it is not reasonable to understand a profit sharing plan to create a mandatory duty for contributions. And the Aguilar case says also you can't have a promise that is so vague and amorphous with no defined terms and to have that a sufficient promise. You can't have inferences, which is what the judge had to, Judge Burns had to resort to, to find a sufficient promise. Did your client actually, either in deposition or trial testimony, didn't Reed actually concede that he had told Chip there was a plan that was equal to or better than the union plan? No. That was Reed's testimony. No. He testified that in 1970, in the 70s, when he, when Chip, it was 1973, when Chip was trying to make a determination of whether to come on board or stay with the, with EEI, actually at that time it was ESI, or stay with the union, to elect either the increased salary that he would receive from ESI plus ESI's benefits packages, which included the better health plan that covered the family, the dental, the vision, the vacation, and all of that, most of which the other plan or the union plan did not cover. The union plan was a defined benefit plan, and Reed gave Chip his personal opinion. He says, I think I can do a lot more with this company. I think the profit sharing plan, which is going to allow up to 15%, is going to end up better than the other. It's a better deal. That was based on projections because the company had been growing during that period of time. More contracts were coming in, which required more employees, which required more equipment and so forth to be purchased. And so the company grew up to 1977 to 177 employees. And in 1977, it got a noose around its neck by the rezoning, by the county, prohibiting any further industrial use. And then for the next six to seven years, it spent trying to find a property, get it approved. It was hunting for dollars, as Reed says, all the time. So his predictions about what he believed a profit sharing plan's value is was not testimony that he – Didn't the district judge find they were not predictions but that they were promises? I'm sorry? Didn't the district court find that they were not predictions but they were promises? The district court characterized them as promises. And that was the promissory stuff. We can't accept that finding, can we? I mean, it's a question of what these brothers said to each other 30 years ago. The district judge made a factual finding about what the statements were.  Well, first of all, some of the district court's characterizations of the testimony was not correct. It wasn't the same as the testimony. For instance, the district court said that – I don't have it right in front of me – that Reed had testified that – or had admitted that $1,800 was in the plan in 1984. Yet the district court was referring to Reed's testimony about the investment in the South Poway property, which wasn't a profit sharing plan investment. Reed had $75,000 of his own money that he took a second out on his home to try and produce investment profits so that he could provide something for two friends and Chip as a cushion if those profits came in. But that wasn't a profit – a promise that I've now created a defined benefit plan. Yeah, you're – I mean, the district court made certain findings. And what you have to show is that they were clearly erroneous findings, not that it was a misinterpretation by the judge. You have to show, no, he said that at Page's – no, he said that Reed said this, but then you have to point it to the transcript where Reed did not say that or that was just wrong for the district court to have made that finding. Well, don't try to do it now until your time's up, but we'll give you an extra minute or two for rebuttal if you want to look to find anything. Okay, I will do that. Did the court have any other questions about the statute of limitations or the greening factors? Good morning, Your Honors. John Frenney appearing on behalf of Appellee Ray Ennis. And because of the names of the parties, his brother is Reed, so we prefer to him by the name he usually goes by is Chip. In response to the panel's question about didn't Mr. Ennis admit that he had told his brother that he was going to fund a pension equal to or better than the iron workers or operating engineers pensions, which were the pensions at issue, I have a reference for the court in the record at trial. It was actually deposition testimony that was read at trial. Page 7 of the excerpt, page 621, starting at line 20 through 623, line 5. And if the court, if it pleases the court, I could read that. Is it brief? It's very brief, Your Honor. Read the statement. I'm sorry? Read the statement. It says, question. Did you ever tell Chip you were going to fund a pension plan so he would receive a pension better than he would have received from either the iron workers or the operating engineers? Answer. I think the discussion was equal to. Question. If I understand you correctly, what you did tell him was that the pension would be equal to what he would receive from either the iron workers or the operating engineers. Answer. At the time that these discussions took place, I was assumed that Chip would give me his best efforts until he was ready to retire, and I fully intended to do it. We did, in fact, make that admission, and that's not the only reference. There's other references in the record that we cited. Let me ask you another question. I'm confused. Is this an equitable estoppel claim or a promissory estoppel claim, or is it a claim under subchapter 4 of ERISA for breach of fiduciary duties under section 404A? What exactly is this claim? This claim is under section 4 of ERISA. It is a breach of fiduciary duty claim where we are seeking an equitable remedy under 302, under the 302 section, because there is no other remedy under ERISA. Under 302? I'm sorry, Your Honor. 502, you mean? 502, yes. I'm sorry. Well, that leads you into a dark hole on the statute of limitations, because 502. No, no, not 502, Your Honor. It's not a claim for benefits. It's a claim based on breach of fiduciary duty. Where do you look for your remedy? Where we look for our remedy is under ---- You don't look to ERISA or you do? We do look to ERISA, Your Honor. And you look to 502, don't you? We look to 1132A3, 29 U.S.C., 1132A3, Your Honor, which is, I believe, 502A3. Yeah, and 502A3 suggests you look to the state for the most analogous statute of limitations, which might be breach of contract 2 or 4. Well, I don't believe so, Your Honor, because the claim is based on breach of fiduciary duty under ERISA. It's not based on a state law claim. It's, I mean, as I interpret Greeney, it says that equitable estoppel, I know that it's Your Honor's decision, but equitable estoppel can't come in when there is no other remedy under ERISA sections. But as I see this, this is a breach of fiduciary duty where there is no remedy available because of what the defendants did. Why do you end up in 413 if you're actually operating through 502? We end up in 413, Your Honor, because it's a breach of fiduciary duty case. Well, but it isn't a breach of fiduciary duty case. I mean, in substance it is, but it's really a federal promissory, whatever you want to call it, estoppel claim. Well, I see it as a breach of fiduciary duty case as under Verity, Your Honor, under the Supreme Court decision in Verity, where really the crux to the problem were the misrepresentations. And that's really the issue. It's the misrepresentations, and the Supreme Court in Verity clearly stated that if there is no other remedy available under ERISA, that's the section that you look to is 1132A3. And that's how I read it, Your Honor. And then the fiduciary duty statute does apply to their actions. I see it more as a misrepresentation claim and a concealment claim and a failure to comply. What these defendants, what these appellants are trying to do is avail themselves of all the protections that ERISA provides in order to promote pension plans, but not accepting any or complying with any of the responsibilities that they had under that statute. They concede they made no disclosures. They concede they issued no summary plan descriptions. And they have the temerity to argue to this Court that this was a profit-sharing plan when they could not prove that at trial. They produced a document that was not signed that the patriarch and the defendant, who's a fiduciary, admitted under oath he did not know whether that represented the terms of the plan. But yet they turn to this Court and say, King's X, this is an ERISA case. There's no remedy under the law. And we should be able to walk off with impunity after defrauding this gentleman, who happens to be my brother and brother-in-law, for 27 years. That's what they want this Court to hold. And under the Supreme Court's decision in Verity and in this Court's decisions in Greeney, there is a remedy. And under the Great West case, the Supreme Court decision, it falls squarely within what Justice Scalia defined as appropriate equitable relief. That when there is a situation when there are future payments to be made, not past payments, there's a lot of discussion in the appellant's brief about restitution. This is not a restitution case. This is a case where these defendants misrepresented not only to the appellee, Mr. Ennis, Chip Ennis, but to several other of their employees, that they should forego a pension under a defined benefit pension plan with their unions. Based on their contention, they were going to take care of them through their own company pension plan. They gave no one disclosures. They gave no one plan documents. And they represented to Mr. Chip Ennis that this is how it's going to work. You are going to get a monthly payment of $1,800 to $2,000 a month. And they happened to make this representation right at the time that they needed their employees to make representations to the union that, hey, we're taking our pension from the company and not from the union. So that they conveniently wouldn't have to pay into the union the monies that they owed under that defined benefit pension plan. And at the time that they told that to those employees, they admit, both of them, Mr. and Mrs. Reed and Delta Ennis both admit, they had not set aside one penny to provide a pension to anyone and they didn't tell anybody that. But now they come to this court and say, well, ERISA protects us. ERISA doesn't protect that. That's what the court in Verity said. We are not going to interpret this statute to protect what, under common law, you would be held accountable for. But that's what they're asking this court to hold. And they're trying to avoid the six-year statute of limitation. We do take issue with the court's finding as to when we were told, because there is evidence in the record that Mr. Reed Ennis didn't tell us until November of 95, when we quit, that he had not put aside any money for a pension. But even putting that aside, even accepting the court's finding, that six-year statute of limitations protects Chip Ennis because there was actual fraud in this case. The district court found that on multiple occasions. And these defendants admit it. And they complain and they make arguments that we should have known when, if they had complied with their obligations under the statute, there would be no question that we knew because they would have told us. Do you have a case that says you're entitled to the provisions of 413 in terms of statute of limitations? I do not have a case directly on point for that, Your Honor, other than the language of the statute that says it applies in cases of breach of fiduciary duty under the statute. So everyone admitted it was an ERISA plan? I'm sorry, Your Honor? Both sides admitted it was an ERISA plan. There was an ERISA plan. There was an ERISA plan. The issue is, what did it say? And the only representations made to Chip Ennis were the verbal representations as to what the plan said and what it provided from his brother. So why aren't you arguing that ERISA would preempt state law in this case, since there was an ERISA plan, so we would have to look to the statute of limitations? Well, the court has actually found that ERISA has preempted state law in this case. In many cases, ERISA looks to the state law. In some cases, that's true, Your Honor, but this is not – we are not alleging breach of contract. We are not alleging – we are alleging breach of fiduciary duty. And we are looking to the statute as to, under Verity, what section do you go to when everything else under ERISA is eliminated? And the district court has found that in the summary judgment rulings. You look to 1132A3. That's what Verity says. I suppose you could have brought a breach of contract claim. We did. It was found preempted. It was dismissed as preempted. It was dismissed as preempted. We brought a breach of fiduciary duty state law claim. It was preempted. We made the argument that some of the misrepresentations happened before the enactment of the statute, but the court said, well, that may be true, but it was more of a stream of activity, and I'm going to find that it's all preempted based on this court's prior rulings. So the only thing you could look to was Equitable estoppel under ERISA, and that's the Greene case. That's correct. That's the only – that's the only available remedy left for us under the circumstances of this case. Even the district court found that – it found that the conduct of these defendants was particularly despicable from the standpoint in the summary judgment motion, that they had terminated this plan, and also they didn't tell anybody about it. They prevented these participants from taking any other type of action under ERISA by their concealment. And what they're trying to do at this level, Your Honors, is re-argue the facts. I mean, looking at their reply brief, there's very few references to the record, and there's new facts that I have never heard before. I was the trial attorney. The other – actually, I've covered all of the points that I believe I need to address in oral argument as far as whether this is appropriate equitable relief, whether we're entitled to attorney's fees under the five sections. I know that that will turn to a degree on some of the factors under HUML based on whether we prevail at this appeal, but I would submit to the court on my brief, I've argued what I would argue here. I don't find the need to repeat to the court my statements. Does anybody look to see whether a claim such as this, federal common law, has a statute of limitations anywhere in federal law, or do you look to the state law for the analogous statute of limitations? I do not know the answer to that question, Your Honor. Under my understanding – I don't know the answer to that question, Your Honor. I'm just assuming that there is such a thing as an equitable estoppel claim such as this that has nothing to do with ERISA, and at some point somebody must have said, okay, what's the statute of limitations on this? Probably you look to the analogous state statute. I don't know the answer to that, Your Honor. I apologize. I've looked at this case strictly from the standpoint of ERISA, from the outset when we lost our preemption arguments, and I've looked to the Verity case as really the controlling authority as to where the remedy lies for this type of conduct. Do you have any problem at all with the idea that this is somehow ambiguous, something that doesn't exist can be ambiguous? No, I don't have a problem with it, Your Honor, from the standpoint of this. If you go by what was actually given to us, there is – the ambiguity really – the ambiguity exists because in their defense, the defense are saying this is a profit-sharing plan and we didn't have to put anything in. But they don't have any documents to back that up. But then in their statements and disclosures concerning the plan, they described it as a defined benefit plan that would pay a certain amount per month. So you're saying that it is ambiguous because of the oral representations that occurred later, even though we don't have the document? What I'm saying is – exactly, Your Honor, that's exactly it. Based on what they're arguing, the document says, the language that they have – the explanations that they gave to us, the only explanations received of the plan, are different from that. So if they're contending that the plan said something else, it's really – at that point, it seems to me that we show, well, you say that the plan said this, in some arguments, actually a trial. We had no one say what the written plan said. Reed Ennis could not say. Maybe it's not really quite the same as ambiguous. Ambiguous is usually if you look at the plan and you can't tell what the language means. It's uncertain. But if you can't tell what the language means because you don't have anything to look at, and you're looking only at the oral representations as to what the plan is, then it's the same thing as if you had an ambiguous plan, because you don't have a plan, a written document, which clearly gives you the answer. So you have to look to the oral statements. I mean, it may be that it needs – I mean, the cases in which they've talked about the requirement that the plan be ambiguous, I assume are all cases where the Court had a plan before it. And I – you might just apply a similar rule to a case where you don't have a plan before you, and you have to determine it purely from the oral statements. I would agree completely with that argument – that statement, Your Honor.  Where the Greeney principles have been applied that I've reviewed, there was a written document that was analyzed. Whereas here – In that case, you would say, well, it's got to be ambiguous if the plan is clear. But obviously the plan's not clear when you just have oral statements, which are somewhat conflicting. That's right. That's right, Your Honor. Just briefly, Your Honors, on the finding that we were informed in 1993, we do contest that. I've cited the pellet record in the brief. Well, do you think we can make a determination that the district court's findings are clearly erroneous? Well, Your Honor, on the statute of limitations issue, it is a de novo review of the evidence. I would agree that it could be looked at both ways. Under city of Cotati, Your Honor, the Court – in other cases, the Court has said the statute of limitations presents a de novo issue as to what statute applies and when it began to run. But you don't review the district court's findings of what was said when de novo. I would agree that purely factual findings are reviewed on a clearly erroneous standard generally. I'm somewhat unclear by the Court's rulings as to what extent the de novo review takes place of the district court's findings, because there are conflicting statements in the record. The Court did find – and we've acknowledged that – that there was a notification in 1993. Well, and it based it on its finding that Reed was credible. That's right. As to that issue. We acknowledge that, Your Honor. We do acknowledge that. But my submission to the Court is this is a unique case. Honestly, I pray that there is never another case like this one. It's a situation where it doesn't fit neatly into any particular hole. You need to make a separate motion for appellate attorney's fees. I know you requested it in your brief, but you didn't file a separate motion, did you? Well, not yet, Your Honor. I don't believe my time would run until – you have to be the prevailing party so that the Hummel factors can be. It's belt and suspenders, Your Honor. I'm basically giving everyone the heads up that we will request it if we win. Thank you. I would like to address just a couple of points. With respect to the Verity case, the Verity case was alleged breach of fiduciary duty in terms of misrepresenting the character of the new property to induce employees to go over to that corporation, become employees, then participate in that plan. The remedy that the Court fashioned was clear reinstatement into the parent's plan. It was not a monetary damages award. In this case, there was a brand new plan created based on these alleged oral promises. With respect to that, let me make one point on the testimony. Is it improper to characterize that as specific performance? Pardon me? Is it improper to characterize that as specific performance? Improper to characterize that. What you just said, the creation of a new plan. The creation of a new plan, the test for creation of a new plan is under the Donovan versus Dillingham analysis. And the Court addressed that and said these terms or this alleged promise is way too vague, way too vague. I use the words very, very amorphous. And it doesn't satisfy the Donovan plan. So basically, if you take these promises, these alleged promises, to create a new plan, what the Court would have to have done is replace the longstanding law using the Donovan analysis and use a Federal common law promissory estoppel even though an element of promissory estoppel is a clear and unambiguous promise without resort to inferences. The District Court thought it was granting specific performance. Yes. Yes. But it did that. It created a new plan, not only a new sort of a branch off of the profit sharing plan, it was a completely different kind of plan. And it did that by bringing in, it had to bring in all of the vesting and everything that came from the operator's union plan when it was the, another plan that the employee was a member of and did most of his, well actually he was a member of both the plans, or both of the unions, but one of the plans was the one he was a member of and that was the not the operators. Ironworkers. Thank you. With respect to the testimony, at the time I assumed he would give me his best efforts until he retired. That was a statement if we can't get the profit sharing plan funded and you're still with the company and the company makes it and you're here when you're retired then we'll find a pension for you. Chip quit at 50 years old when the company was going down. He came back in 1998, 15 years before retirement and now he wants the profit sharing plan to become something different. And that's why the use of that testimony was incorrect. With respect to... I'd like to make a comment on your briefs before you sit down. I found them very hard to read through because of all your bolding. I found them very difficult to read because of the way they were printed with all this different bolding and type sets. I just thought I should tell you that because it was very difficult reading to get through. Okay, I appreciate that. Actually I tried to use that to help the court get through it and create some variety. No, because then your eyes are drawn to the bold and you're not getting, you know, you're reading a lot of material to get ready for this. Yes. One final point that I would like to make is the reference to the Knudsen court discussion and I think I referenced that in the brief directing the court to the Bowen case, pages 713 and 714. And Bowen, it says, Bowen, upon which petitioners reply, is not to the contrary. We held in Bowen that the provision of the Administrative Procedure Act that precludes actions seeking money damages against federal agencies does not bar a state from seeking specific relief to obtain money to which it claims entitlement under the federal Medicaid statute. Bowen did not turn on distinctions between equitable actions and other actions but rather on what Congress meant by, quote, other than money damages, end quote, in the Administrative Procedure Act. Furthermore, Bowen, unlike petitioners claim, did not deal with specific performance of a contractual obligation to pay past due sums. Rather, Massachusetts claimed that the federal government not only failed to reimburse it for past expenses pursuant to a statutory obligation but that the method the federal government used to calculate reimbursements would lead to underpayments in the future. Thus, the suit was not merely for past due sums but for an injunction to correct the method of calculating benefits paid going forward. Anyway. We're way over time, so that's enough. Oh. But we can read the case. Thank you. Okay. I appreciate it. Thank you very much. Thank you, Your Honor. The case just argued will be submitted. The next case for oral argument is Cashin v. Kent. Good morning, Your Honor. May it please the Court and Ms. Morton.
judges: Reinhardt, Trott, Wardlaw